UNITED STATES

v.

**Ralph Ynzunza ESPINOSA, 526 96 7615
Seaman Apprentice (E–2) U. S. Navy.**

**NCM 75 2744.**

U. S. Navy Court of Military Review.

Sentence Adjudged 10 June 1975.
Decided 30 Jan. 1976.

LCDR T. D. Keating, JAGC, USN, Appellate Defense Counsel.

LCDR Harvey E. Little, JAGC, USN, Appellate Government Counsel.

Before CEDARBURG, Chief Judge, and MURRAY, Senior Judge and GLASGOW, Judge.

## DECISION

MURRAY, Senior Judge:

Tried to a general court-martial with members, appellant was convicted, contrary to his pleas, of the wrongful possession, transfer, and sale of LSD in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892, and sentenced to a bad conduct discharge, confinement at hard labor for three months, forfeiture of $250.00 pay per month for three months, and reduction to pay grade E–1. The convening authority approved the sentence without modification or suspension.

Appellant assigns the following errors for consideration by this Court:

### I.

APPELLANT WAS DENIED MILITARY DUE PROCESS WHEN HIS TIMELY REQUEST FOR A JUDICIAL DETERMINATION AS TO THE NECESSITY FOR CONTINUED CONFINEMENT PRIOR TO TRIAL WAS SUMMARILY DENIED.

A. A Judicial Determination As To Probable Cause And The Necessity For Confinement Prior To Trial Is Required By Military Due Process And The United States Constitution.

B. The Appellant's Timely Request For An Opportunity To Appear Before A Neutral Officer Or Judge For A Determination As To The Necessity For Confinement Before Trial Was Wrongfully Denied.

C. The Appropriate Relief For A Denial Of Due Process In The Military Is Dismissal Of All Charges And Specifications.

### II.

APPELLANT'S PRETRIAL CONFINEMENT IN CONTRAVENTION OF LOCAL REGULATIONS REQUIRES DISAPPROVAL OF THE BAD CONDUCT DISCHARGE.

Appellant contends that the holding in *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), wherein the United States Supreme Court held that the Fourth Amendment requires a "judicial determination" of probable cause as a prerequisite to extended restraint of liberty following arrest, requires some sort of judicial review of any pretrial confinement of a serviceman if such confinement is for an "extended" period (not clearly defined by appellant). Combining this premise with the contention that the holding of the Eighth Circuit Court of Appeals in the case of *DeChamplain v. Lovelace*, 510 F.2d 419 (1975), to the effect that established procedures involving pretrial confinement in the military fail to comport with the minimum standards of due process, appellant reasons that the established procedures, ipso facto, must be amended to provide for an impliedly unqualified right to "judicial" review of such confinement. Contending further that appellant's "timely request" for such review of his pretrial confinement having been "wrongfully denied" through the chain of command, this resulted in a fundamental denial of due process under the United States Constitution for which the remedy is dismissal of the charge and specifications, or (in the alternative) at a minimum, disapproval of the bad conduct discharge in this case.

We agree that the intent of the United States Supreme Court decision in *Gerstein, supra*, certainly has a relationship to military as well as civilian jurisdictions, but we do not agree with appellant's interpretation of the extent to which and forum in which a "judicial determination" is to be made as to whether or not probable cause exists as a prerequisite to extended pretrial restraint. *See Courtney v. Williams et al.*, No. 75–64, 1 M.J. 267 (Misc. Docket) U.S.C.M.A. (decided 23 January 1976).

*Gerstein* requires that before there may be extended restraint on an individual's liberty there must be a determination by a neutral and detached magistrate that probable cause exists to believe that the accused has committed a crime. *Gerstein* clearly demonstrates that while the determination must be "judicial" in character, that determination need not be made by a judge as such, or even a lawyer, but rather is to be made by a magistrate or justice of the

peace. In military law, magistrate powers are vested in the commanding officer and in the convening authority. Paragraph 152, Manual for Courts-Martial, 1969 (Revised edition), empowers the commanding officer, upon a demonstration of probable cause, to authorize searches of an accused's belongings. Such authority is clearly the sister of the authority to seize and detain the person upon probable cause under the Fourth Amendment to the United States Constitution. Further, the convening authority, prior to referring a case to trial, must be satisfied that there exists sufficient admissible evidence to demonstrate probable cause to believe the accused committed the crime charged. Paragraph 35*b*, Manual, *supra*. Consequently, it is apparent that in military law the determination that probable cause exists may be made by the commanding officer.

Further, it is clear that *Gerstein* requires no formal hearing. Rather, the court in *Gerstein* held that the determination need not be accompanied by full adversary safeguards because it was not a critical stage of the prosecution. In the case *sub judice*, there was a requirement that the confinement of any accused be reviewed by the Commander, Naval Base, Subic Bay, on the first working day after confinement. This requirement is in compliance with Article 11, Uniform Code of Military Justice (10 U.S.C. sec. 811), which is plainly intended to accomplish the identical result as *Gerstein*. Article 11 requires that the officer receiving the accused for confinement may (and in the instant case *must*) demand a statement in writing of the offense charged signed by the committing officer. That article, in section (b), requires that the receiving officer report to the commanding officer, within 24 hours, or as soon as he is relieved, the name of the prisoner, the offense charged, and the name of the officer who ordered the confinement.

Military legal history provides guidance as to the meaning of "commanding officer" for these purposes. Colonel Winthrop in his *Military Law and Precedents*, Second Edition, 1920 Reprint, says of the Sixty-eighth Article of War (which is, except for minor exceptions, an *en haec verba* earlier version of Article 11, UCMJ):

The chief intent of this statute evidently is to preclude the unreasonable detention without trial of the prisoners committed daily to the guard-house at post, etc., and to secure them a prompt trial by bringing the cases, every twenty-four hours, (or at other brief regular periods,) to the attention of the commanding officer, who, upon examination of the facts reported, may determine then and there, so far as in his power, whether the parties shall be tried or released. Further, the report being duly made, the Commander becomes the officer responsible for the proper disposition of the case. The commanding officer referred to in the Article is of course the head of the command by the guard of which the prisoners have been held, that is to say the officer commanding the regiment, detachment, garrison, post, etc. [Winthrop, *supra*, at 128].

That the report is intended to be made to a senior commander is plainly demonstrated by even earlier statutes such as Article LXI of the Articles of War of James II, 1688, which required the 24-hour report to the "General or other Chief Commander"; by Article XXI of the British Articles in effect at the time of the American Revolution, which required a report to a regimental commander of minor offenses, and to the "Commander in Chief" of major offenses; and by Article 19, Section XIV, of the American Articles of War of 1775, which is identical to the British Article then in effect. That the purpose always has been that a senior commander determine whether probable cause exists is clearly demonstrated by the 1688 Article which requires the "Provost-Martial" to dismiss the prisoner after the report unless ordered otherwise.

It is clear that military law requires the precise kind of determination that the United States Supreme Court has articulated as fundamental in the *Gerstein* case, that is, probable cause for pretrial restraint to be "judiciously" determined by responsible au-

thority within a specified time frame (24 hours in the military). In the instant case that requirement was implemented by the fact that the decision to confine must be that of the commanding officer of the individual.

Turning then to appellant's complaint that it was error to deny his request for "a hearing" before a neutral officer in his reliance on *DeChamplain v. Lovelace, supra,* we find that that Circuit Court holding, whose judgment was not passed on by the United States Supreme Court,[1] extends in principle to those areas not inconsistent with the high court's holding in *Gerstein.* There may be a time when the legislator or higher court imposes additional requirements upon the military system to implement certain aspects articulated in the *De-Champlain* decision such as the initial decision to confine pending trial and the holding of a subsequent hearing thereon to be made by a military judge or officer neutral and detached from the prosecution of the case. But until that time, in the absence of express regulations already imposing such requirement, current military law and military due process do not provide for procedures beyond those intended by *Gerstein* and implemented through appropriate procedures delineated in the Uniform Code of Military Justice and the Manual for Courts-Martial, 1969 (Revised edition), as discussed above. *Courtney v. Williams et al.,* No. 75–64, 1 M.J. 267 (Misc. Docket) U.S.C.M.A. (decided 23 January 1976). Since we do not find any abuse of the prerequisites in this case nor any violation of the rights of the appellant under current military procedures, we find the contentions of appellant to be without merit as to a denial of due process by refusal of his request for a hearing before a neutral officer or judge to inquire into the legality of his pretrial confinement. *Courtney v. Williams et al., supra.*

What then of appellant's contention that his confinement was in contravention of local regulations ( [2] *infra* ) and that his pretrial confinement beyond seven days, without referral to trial, requires remedial action, at least to the extent of disapproval of the bad conduct discharge, if not complete dismissal of the Charge and three specifications?

■ Initially, it is granted that the instruction is poorly drafted in that it fails to articulate the obvious distinctions and time requirements inherent in the various forms of courts-martial. There is no doubt that in theory and practice special courts require more time and preparation than summary courts, and general courts-martial, where the most serious of crimes are tried, require substantial time for accomplishment of pretrial preparation and various mandatory procedures (i. e., Article 32, UCMJ, 10 U.S.C. § 832, investigations, Article 34, UCMJ, 10 U.S.C. § 834, advice to the convening authority, etc.). From this perspective, while we note with displeasure that the language of the regulation in question does not address itself to these more obvious distinctions and thus emphasizes its deficiencies in draftsmanship, it is apparent that application of the regulation was not intended for general courts-martial. With all the attendant procedures and preparational requirements of a general court-martial, it is evident that referral of charges for trial on that level cannot, as a rule, be accomplished within seven days. In the instant case, for example, appellant was ordered into pretrial confinement on 26 March 1975. Following a criminal investi-

1. The judgment was vacated as moot by the United States Supreme Court in a per curiam order on 3 June 1975 (43 U.S.L.W. 3633).

2. Appellant's contentions were coupled with an allegation of a fundamental denial of his rights by a failure of the command to comply with a lawful general regulation ostensibly designed for accused persons' benefit, which reads in part:

(3) In cases where service record entries or other information essential to drafting specifications is readily available, pretrial confinement shall not be permitted to extend beyond one week if the case has not been referred to trial. (COMNAVBASE SUBIC INSTR 5000.-5D of 7 July 1972, Article 3603*d* (3)).

gation into the matter, charges were preferred on 3 April, and on 7 April 1975, a pretrial investigation was ordered pursuant to Article 32, UCMJ. On 8 April 1975, the laboratory analysis of the drug in issue (LSD) was completed and submitted to the command. On 15 April 1975, the pretrial investigation was fully completed and submitted to the convening authority with a recommendation for general court-martial. As can be seen this was not an inordinate amount of time, but clearly beyond the seven days stated in the regulation. Obviously even moving as expeditiously as reasonably possible, referral of the charges could not be accomplished within seven days of pretrial restraint in this case involving a serious charge, nor was it intended that it should be notwithstanding that the regulation is silent as to its implied distinctions between the levels of trial arena.

Under the circumstances, we find no prejudice to the substantial rights of the appellant to have the charges alleged against him disposed of in a reasonable and expeditious fashion nor of a violation of the safeguards intended by the regulation in question. Accordingly, we find reassessment of the sentence to be inappropriate. The alternate prayer for relief of the appellant is denied.

The findings and sentence approved on review below are affirmed.

Chief Judge CEDARBURG concurs.

Judge GLASGOW concurs in the result.